THE STATE OF NORTH CAROLINA, THE CHILD DAY-CARE LICENSING COMMISSION OF THE DEPARTMENT OF ADMINISTRATION AND JOSEPH W. GRIMSLEY, SECRETARY OF THE DEPARTMENT OF ADMINISTRATION, EX REL, RUFUS L. EDMISTEN, ATTORNEY GENERAL OF NORTH CAROLINA v. FAYETTEVILLE STREET CHRISTIAN SCHOOL AND ITS OPERATOR MR. BRUCE D. PHIPPS; GOSPEL LIGHT CHRISTIAN SCHOOL AND ITS OPERATOR MRS. DELORES B. YOKELY; GRACE CHRISTIAN SCHOOL AND ITS OPERATOR MR. EARL R. EATON; IMMANUEL DAY CARE CENTER AND ITS OPERATOR MRS. ELIZABETH HARRELL; BAPTIST TEMPLE SCHOOL AND ITS OPERATOR MR. DONALD R. CARTER; GRACE CHRISTIAN SCHOOL AND ITS OPERATOR MR. ROBERT DURHAM; BETHANY CHURCH SCHOOL AND ITS OPERATOR REVEREND GENE WOODALL; TABERNACLE CHRISTIAN SCHOOL DAY CARE AND ITS OPERATOR MR. RANDALL SHOOK; SOUTH PARK BAPTIST SCHOOL AND ITS OPERATOR MR. DANIEL D. CARR; GOSPEL LIGHT BAPTIST CHURCH AND ITS OPERATOR REVEREND GARY BLACKBURN; FRIENDSHIP CHRISTIAN SCHOOLS AND ITS OPERATOR MR. CHARLES STANLEY; AND ALL OTHERS SIMILARLY SITUATED

No. 7910SC230

(Filed 4 September 1979)

1. **Constitutional Law § 22; Infants § 4— licensing of church owned day-care centers—freedom of religion**

     The application of the licensing requirements of the Day-Care Facilities Act of 1977 to church owned day-care centers does not violate the Freedom of Religion Clause of the First Amendment, since the required license does not relate to the ministry of the churches but only to the condition of the physical facilities of the day-care centers.

2. **Constitutional Law § 22; Infants § 4— licensing of church owned day-care centers—no exemption as vacation Bible school**

     Church owned day-care centers are not exempted from the licensing requirements of the Day-Care Facilities Act of 1977 by the exception in G.S. 110-86(3) for "Bible schools normally conducted during vacation periods," since the operations of the day-care centers are year around and not vacation Bible schools.

3. **Venue § 2— licensing of church owned day-care centers—declaratory judgment action—action for injunction**

     Wake County was the proper venue for an action by the Child Day-Care Licensing Commission against church owned day-care centers located in various counties for a declaratory judgment as to the Commission's authority to require defendants to be licensed pursuant to G.S. Ch. 110, Art. 7, and for an injunction prohibiting defendants from operating a day-care facility without obtaining a license from the Commission.

State v. School

4. **Injunctions § 13— licensing of church owned day-care centers—injunction against operation without license**

> The trial court did not err in entering a preliminary injunction prohibiting defendant church owned day-care centers from operating day-care facilities without obtaining a license from the Child Day-Care Licensing Commission pending a declaratory judgment action determining the Commission's authority to require defendants to be licensed pursuant to G.S. Ch. 110, Art. 7.

APPEAL by defendants from *Smith (Donald L.), Judge*. Orders entered 11 December 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 29 June 1979.

This action was instituted in Wake County on 20 October 1978 by the State of North Carolina and the Child Day-Care Licensing Commission of the Department of Administration (hereinafter referred to as the Commission) seeking a declaratory judgment relating to the plaintiffs' authority to require defendants, church operated day-care centers, to be licensed by the Commission pursuant to G.S., Chap. 110, Art. 7, G.S., Chap. 143B, Art. 9 (Part 4), and the rules and regulations promulgated thereunder by the Commission.

The named defendants are church operated day-care centers and their directors who have either refused to renew their expired licenses, or who have returned their expired licenses, and who have asserted their refusal to be licensed by plaintiff, although they have agreed to make available to plaintiffs evidence that they are complying with fire, health, and safety regulations.

In addition to the named defendants, plaintiffs bring this action against the class of all persons similarly situated; namely, church owned day-care facilities which continue to operate but which have refused to remain licensed by plaintiffs and have denied plaintiffs' authority to regulate them in any manner whatsoever. Plaintiffs also seek preliminary and permanent injunctions enjoining defendants and all others similarly situated from operating any day-care facility without having obtained a license from plaintiff Commission.

The named defendants moved to dismiss the action on the grounds that: (1) the licensing statutes are unconstitutional if they purport to authorize plaintiffs to license church owned day-care facilities; (2) there is no justiciable controversy; (3) church owned

day-care centers are excepted from the licensing requirements by G.S. 110-86(3); (4) the plaintiffs have failed to obtain proper venue and jurisdiction for injunctive relief against those defendants not located in Wake County; and (5) this action is not an appropriate class action, because defendants do not adequately represent the class, and plaintiffs have failed to exhaust administrative remedies.

Plaintiffs filed affidavits of the Secretary of Administration, the Director and the Assistant Director of the Office of Child Day-Care Licensing in the Department of Administration, the Licensing Supervisor for the Office of Child Day-Care Licensing, the Head of the Sanitation Branch, Division of Health Services in the Department of Human Resources, and the Code Consultant Supervisor for the Engineering and Building Codes Division of the Department of Insurance, stating that the day-care licensing requirements speak only to minimum standards of health and safety and do not interfere with any religious practice or contain any educational requirements for staff or children.

Defendants filed an affidavit signed by each of their directors stating that the operation of their day-care centers is part of the ministry of their churches, that the activities of the centers are not compartmentalized into religious and secular components, and that to require licensing by the State would seriously violate defendants' religious liberty. Defendants also filed affidavits of various sanitation and fire inspectors, stating that the various day-care centers operated by defendants were in satisfactory condition.

The court entered an order denying defendants' motion to dismiss on each ground asserted by defendants with leave to defendants to file additional motions should the action not be certified as a class action.

As to plaintiffs' request for a preliminary injunction, the court entered an order granting the injunction. The order provided in part as follows:

"Based on the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. The Commission is required by Article 7 of Chapter 110 of the General Statutes to regulate and supervise all day-care facilities within the State to the end that all such facilities shall be licensed. Refusal of the defendants to be licensed prevents the Commission from fulfilling its responsibilities and constitutes irreparable injury to the people of North Carolina.

EXCEPTION NO. 11

2. Because the defendants have been licensed as day-care facilities in the past, it does not appear that any harm or injury will befall them by requiring them to be licensed as day-care facilities pending a final determination of the rights of the parties.

EXCEPTION NO. 13

3. It appears that plaintiffs will succeed on the merits. The State has an undoubted right to regulate day-care facilities to protect the health and safety of the children in care.

EXCEPTION NO. 15

BASED UPON THE FOREGOING, it is ORDERED, ADJUDGED AND DECREED that plaintiffs' motion for a preliminary injunction be and the same is hereby granted and the named defendants, their agents, servants, employees, members or (D.L.S.) anyone else acting by, under through or in concert with them are hereby enjoined from opening or operating any day-care facilities until such time as they have complied with Article 7 of Chapter 110 of the General Statutes and 1 NCAC 16."

This Court stayed the preliminary injunction pending appeal. Defendants appealed.

*Attorney General Edmisten, by Senior Deputy Attorney General Andrew A. Vanore, Jr. and Special Deputy Attorney General Ann Reed, for the State.*

*Strickland & Fuller, by Thomas E. Strickland; and Lake & Nelson, by I. Beverly Lake, Jr., for defendant appellants.*

ERWIN, Judge.

Ten assignments of error appear in the record. Defendants bring nine of them forward on appeal in seven arguments. After careful consideration of each of the assignments of error in the record before us, we conclude that the orders entered by the trial court were proper in all respects and affirm both orders.

## Constitutional Question

[1] Defendants contend that application of the licensing requirements of the Day-Care Facilities Act of 1977 to their day-care centers amounts to State prohibition of the free exercise of religion and is therefore unconstitutional. We do not agree.

The Act in question provides in part:

"§ 110-88. *Powers and duties of the Commission.*—The Commission shall have the following powers and duties:

(1) To develop policies and procedures for the issuance of a license to any day-care facility which meets the health and safety standards established under this Article.

(2) To approve the issuance of licenses for day-care facilities based upon inspections by and written reports from existing agencies of State and local government where available, or based upon inspections by and reports from personnel employed by the Commission where such services are not otherwise available.

(3) To develop a system or plan for registration of day-care plans in such form and place as shall be determined by the Commission so that day-care plans which are not subject to licensing may be identified, so that there can be an accurate census of the number of children placed in day-care resources, and so that providers of day care who do not receive the educational and consultation services related to licensing may receive educational materials or consultation through the Commission.

. . .

(5) To make rules and regulations and develop policies for implementation of this Article, including procedures for application, approval, renewal and revocation of licenses.

(6) To make rules and regulations for the issuance of a provisional license to a day-care facility which does not conform in every respect with the standards relating to health and safety established in this Article provided that the Secretary of Administration finds, and the Commission concurs in the finding that the operator is making a reasonable effort to conform to such standards, except that a provisional license shall not be issued for more than one year and shall not be renewed.

(7) To develop and promulgate standards which reflect higher levels of day care than required by the standards established by this Article, which will recognize better physical facilities, more qualified personnel, and higher quality programs. The Commission shall be empowered to issue two grades of licenses: an "A" license for compliance with the provisions of the Article, and an "AA" license for those licensees meeting the voluntary higher standards promulgated by the Commission.

(8) To develop a procedure by which the Department [of Administration] shall furnish such forms as may be required for implementation of this Article.

(9) To serve as an administrative-appeal body to determine all issues related to the issuance, renewal and revocation of licenses."

At the outset, we note: (1) that the wording of the Act in question does not grant to the State any authority to interfere with the religious belief or freedom of defendants; (2) that the day-care licensing requirements speak only to minimum standards of health and safety and do not interfere with any religious practices or contain any educational requirements for staff or children; (3) that all of the defendants have heretofore been li-

censed by the Commission without any objections; and (4) that defendants do not contend or show that it is contrary to their sincere religious belief to seek licenses.

The First Amendment of the United States Constitution, applicable to the State through the Fourteenth Amendment of the said Constitution, prevents State enactment of laws prohibiting the free exercise of religion. *Cantwell v. Connecticut*, 310 U.S. 296, 84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352 (1940). *See Church v. State*, 40 N.C. App. 429, 253 S.E. 2d 473 (1979).

Defendants contend that the State may not require "a church" to obtain a license or permit from a state agency as a condition precedent to its performing a major portion of its ministry.

The State responds that despite the breadth of the First Amendment's words, defendants do not enjoy absolute freedom of religion. While their freedom to believe remains inviolate, their freedom to act is subject to reasonable regulation for the protection of society. By general and nondiscriminatory legislation, the State may reasonably safeguard the health, safety, and welfare of its citizens without violating Fourteenth Amendment liberties.

In *In re Williams*, 269 N.C. 68, 80, 152 S.E. 2d 317, 326, *cert. denied*, 388 U.S. 918, 18 L.Ed. 2d 1362, 87 S.Ct. 2137 (1967), our Supreme Court held:

> "The liberty secured by the First Amendment to the United States Constitution and by Article I, § 26, of the Constitution of North Carolina are, however, so basic and fundamental that one may not be compelled by governmental action to do that which is contrary to his religious belief in the absence of a 'compelling state interest in the regulation of a subject within the State's Constitutional power to regulate.'" (Citations omitted.)

In *Wisconsin v. Yoder*, 406 U.S. 205, 214, 32 L.Ed. 2d 15, 24, 92 S.Ct. 1526, 1532 (1972), the Supreme Court of the United States held:

> "It follows that in order for Wisconsin to compel school attendance beyond the eighth grade against a claim that such attendance interferes with the practice of a legitimate

religious belief, it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause."

G.S. 110-88(1) permits the Commission "[t]o develop policies and procedures for the issuance of a license to any day-care facility which meets the health and safety standards established under this Article." The stated purpose of the Act is to protect the "physical safety and moral environment" of children who will use such facilities. G.S. 110-85(2). This is a compelling state interest in the regulation of a subject within the State's constitutional power to regulate.

The question raised by the case *sub judice* is the validity of the Act, whether the legislation on its face is in conflict with the Freedom of Religion Clause of the First Amendment. The power granted to the Child Day-Care Licensing Commission by the Act in attaining the statutory purpose must be exercised so as not to unduly infringe upon the freedom of religion. The religious beliefs of the defendants and other religious bodies may not endanger the peace, good order, and morals of society. We hold the Act to be constitutional on its face and as applied in the case at bar. The license in question does not relate to defendants' ministry in any manner, but to the condition of the physical facility. *See Roloff Evangelistic Enterprises v. State*, 556 S.W. 2d 856 (Texas, Ct. App. 1977). We find no merit in this assignment of error.

[2] Defendants contend that even if the Act is constitutional, it does not apply to defendants because of the exception in G.S. 110-86(3) for "Bible schools normally conducted during vacation periods." We do not agree.

G.S. 110-86(3) provides:

> "(3) 'Day-care facility' includes any day-care center or child-care arrangement which provides day care on a regular basis for more than four hours per day for more than five children, wherever operated and whether or not operated for profit, except that the following are not included: public schools; nonpublic schools whether or not accredited by the State

> Department of Public Instruction, which regularly and exclusively provide a course of grade school instruction to children who are of public school age; summer camps having children in full-time residence; summer day camps; and Bible schools normally conducted during vacation periods."

To us, the record is clear that defendants provide care away from home on a regular basis for more than four hours per day for more than five children less than thirteen years of age. The operations of defendants are year around and are not vacation Bible schools. Defendants' operations are not temporary in nature. This assignment of error is overruled.

<u>Venue</u>

[3]   G.S. 110-104 provides:

> "*Injunctive relief.*— The Secretary or his designee is empowered to seek injunctive relief in the superior court of the county in which a day-care center is located against the continuing operation of that day-care facility at any time, whether or not any administrative proceedings are pending. The superior court may grant injunctive relief, temporary, preliminary or permanent when there is any violation of this Article, or of the rules and regulations promulgated by the Commission, which threatens serious harm to children in the day-care facility or when a final order to deny or revoke a license has been violated or when a day-care facility is operating without a license."

Defendants contend that the above statute requires an action to enjoin the operation of a day-care facility on the ground that it is operating without a license be brought in the county wherein the facility is located. Defendants are located in several counties throughout the State, and this action was brought in Wake County; therefore, the trial court only had jurisdiction over the Wake County defendants.

Plaintiffs elected to pursue the remedy of declaratory relief provided for by Article 26 of Chapter 1 of the General Statutes to test the licensing issue. Plaintiffs sought injunctive relief as an adjunct to the declaratory relief in order to maintain the status quo of compliance with the present statute.

This action was brought in Wake County. Defendants have not shown how they have been prejudiced thereby. Venue is not jurisdictional. *Miller v. Miller*, 38 N.C. App. 95, 247 S.E. 2d 278 (1978); 13 Strong's N.C. Index 3d, Venue, § 1, p. 269.

We hold that Wake County is the proper venue for this declaratory judgment action and that the plaintiffs' motion for preliminary injunction was properly granted. We find no error.

### Findings of Fact and Conclusions of Law

[4] Defendants contend that the trial court's findings of fact and conclusions of law in the preliminary injunction order do not support the order, particularly Findings of Fact Nos. 2, 27, and 33. The findings of fact in question read:

"2. The Child Day-Care Licensing Commission (hereinafter Commission) is an agency of the State of North Carolina and has been vested by the General Assembly of North Carolina with the responsibility and authority of regulating and supervising all day-care facilities within the State to the end that all such day-care facilities shall be licensed.

EXCEPTION NO. 7

\*    \*    \*

27. Pursuant to and in conformity with the duties and responsibilities imposed upon it by the provisions of Article 7 of Chapter 110 of the General Statues [sic] and Part 4 of Article 9 of Chapter 143B of the General Statutes, the Commission has promulgated regulations codified at 1 NCAC 16, which along with the requirements set by the General Assembly in Article 7 of Chapter 110 of the General Statutes establish minimum standards which must be met by all day-care facilities. In order to ascertain whether these minimum standards have been met, the Commission, as a part of these regulations, requires all day-care facilities to submit an annual application to the Commission, and requires inspections of the facilities by State and local agencies to determine compliance with certain health and safety requirements.

EXCEPTION NO. 8

\*    \*    \*

33. The defendants' failure to comply with the plaintiffs' requirements in this area prevents the plaintiffs from carrying out the duties and responsibilities imposed upon them by Article 7 of Chapter 110 of the General Statues [sic] and Part 4 of Article 9 of Chapter 143B of the General Statutes.

EXCEPTION NO. 10"

Defendants argue that the foregoing findings are erroneous and in direct conflict with G.S. 110-86(3) which specifically excludes the defendants from the operation of the statute. We have rejected this contention of the defendants and have concluded that defendants are not exempted from the Act. We find no error in the court's findings of fact.

Our Supreme Court held in *Conference v. Creech* and *Teasley v. Creech and Miles*, 256 N.C. 128, 139-40, 123 S.E. 2d 619, 626-27 (1962):

"Ordinarily a temporary injunction will be granted pending trial on the merits, (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity, and (2) if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably necessary to protect plaintiff's right until the controversy between him and defendant can be determined. *Edmonds v. Hall*, 236 N.C. 153, 72 S.E. 2d 221.

It ordinarily lies in the sound discretion of the court to determine whether or not a temporary injunction will be granted on hearing pleadings and affidavits only. In the exercise of such discretion the court should consider the inconvenience and damage to defendant as well as the benefit that will accrue to the plaintiff. *Service Co. v. Shelby, supra; Lance v. Cogdill*, 238 N.C. 500, 78 S.E. 2d 319; *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116.

On appeal we are not bound by the findings or ruling of the court below in injunction cases, but may review the evidence on appeal. 'Even so, there is a presumption that the judgment entered below is correct, and the burden is upon appellant to assign and show error.' *Lance v. Cogdill, supra.*"

After complete examination of the whole record before us, we are compelled to affirm both orders entered by the trial court. The record reveals there is probable cause to believe the plaintiffs can establish the rights they assert; and there exists a reasonable apprehension of irreparable loss unless the relief is granted. Plaintiffs have statutory obligations to enforce.

## Class Action

The trial court entered the following ruling on defendants' motion to dismiss: "Defendants' motion to dismiss for reason that the action has not been certified as a class action is hereby denied without prejudice to defendants to file such additional motions as they think are necessary should this action not be certified as a class action." We hold the issue of a class action has not been determined by the trial court and therefore not before us. The trial court will be governed by G.S. 1A-1, Rule 23, of the Rules of Civil Procedure in ruling on this issue.

## Conclusion

Plaintiffs have stated a claim upon which relief may be granted.

The orders entered by the trial court are in all respects proper and are affirmed.

The stay ordered heretofore entered by this Court is dissolved herewith.

Orders affirmed.

Judges CLARK and MITCHELL concur.

Judge MITCHELL concurred in this opinion on 17 August 1979 prior to his resignation from the Court on 20 August 1979.